1
2
3
4
5
6
7
8            **UNITED STATES DISTRICT COURT**
9            **CENTRAL DISTRICT OF CALIFORNIA**
10
11   ROBERT LARRY S.,[1]              Case No. 2:19-cv-05178-AFM
12                    Plaintiff,
13          v.                        **MEMORANDUM OPINION AND
                                      ORDER AFFIRMING DECISION
14   ANDREW M. SAUL,                  OF THE COMMISSIONER**
15   Commissioner of Social Security,
16                    Defendant.
17
18          Plaintiff filed this action seeking review of the Commissioner's final decision
19   denying his application for disability insurance benefits. In accordance with the
20   Court's case management order, the parties have filed memorandum briefs
21   addressing the merits of the disputed issues. The matter is now ready for decision.
22                            **BACKGROUND**
23          In November 2012, Plaintiff applied for disability insurance benefits, alleging
24   disability beginning March 3, 2009. Plaintiff's application was denied initially and
25   upon reconsideration. (Administrative Record ["AR"] 82-87, 89-98.) A hearing took
26   _____
27   [1]   Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure
     5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case
28   Management of the Judicial Conference of the United States.

place on November 23, 2015 before an Administrative Law Judge ("ALJ"). On December 16, 2015, the ALJ issued a decision finding Plaintiff not disabled. (AR 103-111.) Subsequently, the Appeals Council remanded the case for further proceedings based upon new information about Plaintiff's date last insured. (AR 116-120.) A second hearing was held before the ALJ on April 24, 2018. Plaintiff and a vocational expert ("VE") testified at the hearing. (AR 17-40.)

In a decision dated August 31, 2018, the ALJ found that Plaintiff suffered from the severe impairments of multi-level mild to moderate degenerative changes in thoracic and lumbar spines; obstructive sleep apnea; subtle meniscus and cartilage abnormalities of the left knee status post remote repair; and obesity. (AR 47.) The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with limitations to frequent stooping, kneeling, crouching, crawling, and bending and to occasional climbing ladders, working at unprotected heights, and walking on uneven terrain. The ALJ also restricted Plaintiff to unskilled work at the SVP 2 level. (AR 47.) Relying on the testimony of the VE, the ALJ concluded that through the date last insured, Plaintiff was unable to perform his past relevant work but could perform other jobs existing in significant numbers in the national economy. (AR 54-55.)

The Appeals Council subsequently denied Plaintiff's request for review (AR 1-6), rendering the ALJ's decision the final decision of the Commissioner.

## DISPUTED ISSUE

Whether the ALJ properly rejected Plaintiff's subjective complaints.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See*

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

### A. Plaintiff's Subjective Complaints

At the hearing in 2015, Plaintiff testified that he had difficulty lifting more than five pounds due to back pain. Plaintiff described shooting pain down the back of his legs. Plaintiff received "Pain Management" for his back and was prescribed Percocet, Lyrica, and Diazepam. On a scale of zero to ten, Plaintiff said the pain was a ten. Medication reduced the pain only to a nine. He received two epidural shots but did not obtain lasting relief. Plaintiff also received neurolysis every six months. (AR 69-72, 75.)

Plaintiff estimated that he was able to stand for about 15 to 20 minutes before his back began hurting. He could not sit for long periods without getting up and moving around. According to Plaintiff, he had to lie flat on his back anywhere from four to eight hours a day. (AR 74-75.)

Plaintiff also testified that he suffers from knee pain, primarily in his left knee, but he had not obtained treatment at that time. (AR 70-71.)

Plaintiff used a CPAP to treat his sleep apnea. Even with the machine, he sleeps only three to four hours a night. During the day, he sometimes naps. (AR 73-74.)

With regard to daily activities, Plaintiff testified that he was unable to carry water or milk. He could carry very light groceries, such as bread. He had difficulty

3

bending down to put on his socks and shoes and required help doing so three to five times a week. Plaintiff was able to shower on his own. He was unable to mow the lawn, ride a bike or golf. Nevertheless, he testified that he did "try to exercise" to maintain health. He was able to "pull the trash cans out." (AR 77.) Essentially, Plaintiff spent most of his day lying on his back. (AR 76.)

At the 2018 hearing, Plaintiff testified that he had suffered from neuropathy in his feet for the prior two to three years. He also experienced cramping in his legs and feet. Plaintiff described his feet as feeling like "they're on fire" and very tender, burning. According to Plaintiff, he took medication for these problems. He had been trying different shoes and intended to inquire with his pain management nurse or doctor. He began using knee wraps and a cane two months prior to the hearing. (AR 22-23, 27.)

Plaintiff said that his back had not improved since the prior hearing. Although he still received neurolysis, the pain relief lasted only a few days. (AR 28-30.) Plaintiff had received four to six injections for his left knee pain. Otherwise, his medication remained the same. He explained that he had not seen an orthopedic surgeon for his back because he cannot drive on his medication. (AR 31.)

Finally, Plaintiff reiterated that he was able to walk only 15 to 20 minutes. He continued to lie on his back, which helped relieve pain and stress. (AR 28, 31-32.)

**B. Relevant Law**

Where, as here, a claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce pain or other symptoms and the ALJ has not made an affirmative finding of malingering, an ALJ must provide specific, clear and convincing reasons before rejecting a claimant's testimony about the severity of his symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (citing *Garrison v. Colvin*, 759 F.3d 995, 1014-1015 (9th Cir. 2014)). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the

claimant's complaints." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834) (9th Cir. 1995)). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1991) (en banc)).

Factors an ALJ may consider include conflicts between the claimant's testimony and the claimant's conduct – such as daily activities, work record, or an unexplained failure to pursue or follow treatment – as well as ordinary techniques of credibility evaluation, such as internal contradictions in the claimant's statements and testimony. *See Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). In addition, although an ALJ may not disregard a claimant's testimony solely because it is not substantiated by objective medical evidence, the lack of medical evidence is a factor that the ALJ can consider in making a credibility assessment. *Burch v. Barnhart*, 400 F.3d 676, 680-681 (9th Cir. 2005).

**C. Analysis**

The ALJ found Plaintiff's subjective complaints of disabling pain and limitations to be less than fully credible. As discussed below, the ALJ's decision set out several reasons for that determination. (AR 48-49.)

1. Lack of Objective Medical Evidence

So long as it is not the only reason for doing so, an ALJ permissibly may rely on a lack of objective medical evidence to discount a claimant's allegations of disabling pain or symptoms. *See Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ can consider in his [or her] credibility analysis."); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (same).

The ALJ summarized Plaintiff's subjective complaints and concluded that although Plaintiff's impairments resulted in some functional limitations, the medical evidence did not support the severity of Plaintiff's allegations. (AR 48.) In discussing the medical record, the ALJ began by pointing out Plaintiff's history of back pain beginning in 2009. Physical examination regularly revealed tenderness and limited range of motion of the thoracic and lumbar spines. While the record included some notations of spasms, a positive straight leg raise test, and abnormal gait (*see e.g.*, 495, 550, 775, 788), the ALJ noted that "overall" the treatment records reveal Plaintiff's gait was mildly abnormal to normal; his straight leg raise test was negative bilaterally; and his strength, sensation and tone were unremarkable or normal. (AR 49, *see, e.*g. AR 396-403, 409, 413, 542-546, 549-550, 555, 560, 567, 572, 577, 582, 587, 599, 691-692, 704, 709, 714, 733, 742-743, 738, 764, 768, 785, 1074, 1079.) Treatment for Plaintiff's back pain included injections, neurolysis, physical therapy, and medication. (AR 396-403, 409, 413, 497, 521, 523, 531, 540, 551, 563-564, 590, 629, 695-696, 759, 781.) A 2013 MRI of Plaintiff's lumbar spine revealed mild scoliosis and mild to moderate degenerative changes. There was no significant central canal or neural foraminal narrowing. A "chain" of small contiguous cysts – probably synovial or ganglion cysts – measuring up to 6mm were found extending along the soft tissues adjacent to the right lateral margin of the right facet at the L4 to L5 level. They did not clearly impinge upon the nerve; rather extended posteriorly in the paraspinal musculature. (AR 388-389.)

After a sleep study in 2012, Plaintiff was diagnosed with sleep apnea and obstructive sleep apnea syndrome. (AR 348-356.) He was provided with a CPAP machine. In follow-up appointments, Plaintiff reported improved sleep. Plaintiff's medical providers regularly observed that he presented for his appointments alert, oriented, and in no distress. (AR 50, *see* AR 395-416, 476, 479, 485, 487.)

Next, the ALJ noted Plaintiff's history of left knee surgery in 1998 and 1999. Since March 2009, Plaintiff had complained of persistent left knee pain, swelling,

and popping. Physical examinations revealed tenderness and limited range of motion in the left knee. Plaintiff's gait was observed to be mildly antalgic. Plaintiff underwent physical therapy and took medication. (AR 50, citing 395-416, 494-688.) A 2012 MRI of Plaintiff's knee revealed minimal joint effusion and a subtle irregularity in the inferior articular surface of the posterior horn of the medial meniscus; the articular cartilage in the medial compartment was very minimally thinned and irregular; there was slight truncation at the apex of the posterior horn of the lateral meniscus; some thinning and irregularity of the adjacent cartilage along the weight bearing aspect of the lateral tibial plateau with subcortical degenerative reactive/cystic marrow changes. (AR 390-391.) The ALJ noted that Plaintiff has been diagnosed with obesity (having a Body Mass Index above 30) and that Plaintiff's treating sources regularly advised him to make dietary and lifestyle changes to encourage weight loss. (AR 398, 413, 492, 766, 923-925, 1066.)

One of Plaintiff's treating sources, Beth Brown, PAC, diagnosed him with lumbar spondylosis, chronic pain, and neuropathy. She provided a medical source statement in which she opined that Plaintiff could stand/walk about fifteen to twenty minutes at one time for a total of less than two hour in an eight-hour workday; sit for one to two hours at a time for a total of at least six hours in an eight-hour workday; he was able to lift/carry 10 pounds occasionally and 20 pounds rarely. (AR 1501-1503.)

In November 2013, Sohail K. Afra, M.D., performed a consultative evaluation of Plaintiff. Examination revealed tenderness to palpation over the paraspinal areas with limited range of motion. Straight leg raise testing was negative bilaterally. Plaintiff's knees had normal range of motion of the knees and no edema, but Dr. Afra reported there was pain with full range of motion. Other than the above, Dr. Afra found no joint deformities, crepitus, effusion, tender or trigger points. Plaintiff's motor strength was normal in all extremities; his muscle bulk and tone were normal; his handgrip strength was normal; his sensation was intact; he was able to walk

7

without difficulties and without an assistive device; and was able to walk on his toes and heels. Dr. Afra diagnosed Plaintiff with sleep apnea, knee pain post-surgery, mild scoliosis, and mild to moderate degenerative changes with no significant central canal or neural foraminal narrowing. Dr. Afra opined that Plaintiff could lift/carry 50 pounds occasionally and 25 pounds frequently; stand/walk for six hours in an eight-hour workday; and sit for six hours in an eight-hour workday; frequently bend, kneel, stoop, crawl, crouch, climb ladders, walk on uneven terrain, and work with heights. (AR 418-423.)

Beginning in October 2011, Plaintiff received treatment from Amy Jones, M.D. In a letter dated October 13, 2015, Dr. Jones indicated that Plaintiff had a history of chronic low back pain and degenerative disc disease. She noted that images revealed mild scoliosis and degenerative changes in the thoracic and lumbar spine. She further noted that after Plaintiff was evaluated by neurosurgery, it was determined that surgery was not indicated. Plaintiff had received pain management treatment for several years. He was advised not to drive while taking his medication. (AR 756; *see also* AR 401, 597.)

Finally, the ALJ stated that State Agency physician B. Vaghaiwalla, M.D., reviewed the medical record. Among other things, Dr. Vaghaiwalla opined that Plaintiff could lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk for a total of six hours in an eight-hour workday; and sit for a total of six hours in an eight-hour workday. (AR 89-99.)

Based upon the foregoing record, the ALJ limited Plaintiff to light work with additional restrictions in stooping, kneeling, crouching, crawling, bending, climbing ladders, working at unprotected heights, and walking on uneven terrain. As set forth above, the medical record reveals minimal findings of significant impairments. With respect to Plaintiff's back impairment, the ALJ noted that the objective medical evidence regarding Plaintiff's back revealed mild to moderate degenerative changes with no significant central canal or neural foraminal narrowing. (AR 389.) Most of

the treatment notes reveal modest positive findings such as tenderness and limited range of motion. The physical examination by Dr. Afra was essentially unremarkable. Likewise, the MRI of Plaintiff's knee showed minimal joint effusion, minimal thinning of cartilage, and other irregularities described as slight or subtle. (AR 390-391.) While Plaintiff was diagnosed with sleep apnea, the record does not contain evidence indicating that the condition caused additional symptoms or limitations. Similarly, the record does not include evidence that Plaintiff's obesity caused any symptoms that resulted in functional limitations.

In sum, the ALJ's characterization of the medical evidence is supported by substantial evidence. It was reasonable to conclude that the minimal findings did not support Plaintiff's allegations of disabling pain and symptoms, including his assertion that he needed to lie down four to eight hours a day, was unable to lift five pounds, and could only walk or stand for 15 to 20 minutes. Accordingly, the ALJ properly relied upon the medical evidence this as one of several factors in her decision to discount Plaintiff's subjective complaints. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (lack of objective medical evidence to support claimant's subjective complaints constitutes substantial evidence in support of an ALJ's adverse credibility determination).

2. Symptoms Improved with Treatment

Generally, the effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1039-1040 (9th Cir. 2008). Accordingly, substantial evidence of effective treatment provides a specific, clear, and convincing reason to discount a claimant's subjective symptom testimony. *See Youngblood v. Berryhill*, 734 F. App'x 496, 499 (9th Cir. 2018); *Tommasetti*, 533 F.3d at 1039-1040.

Here, the ALJ found that the record revealed Plaintiff's pain medications had improved his pain and functioning and noted that Plaintiff regularly reported improvement to providers during his pain medication management visits. The ALJ

also pointed out that over the course of his treatment, Plaintiff's gait was generally mildly antalgic to normal, and he was able to walk without the use of an assistive device. In addition, the ALJ stated that Plaintiff's sleep improved with the use of a CPAP machine. (AR 49.)

The ALJ's findings are supported by substantial evidence. For example, treatment notes consistently reflect that his prescription pain medication reduced Plaintiff's pain by "> 50%, and is enough to make a real difference," relief lasted for four to six hours, and the medication caused no side effects. (*See* AR 548, 570, 575, 690, 724, 727.) Treatment notes also reflect that Plaintiff obtained "excellent" relief of his back pain from neurolysis. (AR 494, 497, 551, 626, 695-696.) In October and November 2014, Plaintiff reported excellent (80%) relief from neurolysis, and the relief lasted six months. (AR 537, 540.) In February 2016, Plaintiff again reported excellent relief from neurolysis lasting six months. (AR 766.) With respect to his left knee, Plaintiff received an injection in his left knee in April 2016. (AR 766-767.) In July 2016, he reported "good relief" from the injection, and per his request, received a second injection. (AR 1072.) Finally, the record indicates that the CPAP machine helped Plaintiff's sleep apnea. (AR 1498.)

Accordingly, the ALJ properly relied upon the effectiveness of treatment and medications in controlling symptoms as a reason for discrediting Plaintiff's testimony regarding the disabling effects of his impairments. *See*, *e.g.*, *Tommasetti*, 533 F.3d at 1040 (ALJ properly rejected claimant's subjective complaints where medical records showed that she responded favorably to physical therapy and medication); *Abreu v. Astrue*, 303 F. App'x 556, 558 (9th Cir. 2008) (ALJ provided legally sufficient reason to reject claimant's testimony where ALJ observed that, "[f]or the most part, medication regimens appear to be effective in pain control"); *Harris v. Berryhill*, 2017 WL 5634107, at *3 (C.D. Cal. Nov. 22, 2017) (evidence that plaintiff's pain and symptoms improved with epidural steroid injections constituted clear and convincing reason to discount plaintiff's credibility), appeal

dismissed, 2018 WL 3391608 (9th Cir. May 11, 2018); *Herrera v. Colvin*, 2014 WL 3572227, at *7 (C.D. Cal. July 21, 2014) (evidence that plaintiff's pain improved with medication and exercise was clear and convincing reason to discount subjective complaints).

### 3. Daily Activities

The ALJ found that Plaintiff had engaged in "a somewhat normal level of daily activity and interaction." (AR 48.) The ALJ pointed out that Plaintiff's daily activities included "dress, bathe, prepare food, clean the house, manage treatment and appointments, travel, and engage in regular exercise." It was also noted that Plaintiff had recently attended a Cajun festival and stayed at a casino. (AR 49; *see also* AR 592, 597, 1020, 1154, 1196.)

Generally, "[e]ngaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim*, 763 F.3d at 1165. Plaintiff contends that his ability to attend appointments, bathe, dress, and go to a casino for some unknown length of time do not reflect an ability to work. (ECF No. 23 at 10-11.) The Commissioner counters that the activities need not be commensurate with full-time work to support the conclusion that his subjective complaints were not credible. Rather, Plaintiff's activities need only show that he exaggerated his symptoms or limitations. (ECF No. 26 at 8.) The Court agrees and finds that substantial evidence supports the ALJ's conclusion in this regard – which is another valid reason for discounting Plaintiff's credibility.

Moreover, even assuming that the ALJ erred in relying on Plaintiff's daily activities, any error was harmless in light of the other legally sufficient reason provided by the ALJ. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (where one or more reasons supporting ALJ's credibility analysis are invalid, error is harmless if ALJ provided other valid reasons supported by the record); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-1163 (9th Cir. 2008) (despite the invalidity of one or more of an ALJ's stated reasons for discounting a claimant's

1    credibility, the court properly may uphold the ALJ's decision where the ALJ stated
2    sufficient valid reasons).[2]

3                                         **ORDER**

4         IT IS THEREFORE ORDERED that Judgment be entered affirming the
5    decision of the Commissioner and dismissing this action with prejudice.

6

7    DATED:  4/30/2020

8                                                    _____
9

10                                                        ALEXANDER F. MacKINNON
                                                       UNITED STATES MAGISTRATE JUDGE
11

12

13

14

15

16

17

18

19

20

21

22

23    _____

24    [2] The ALJ also found that Plaintiff's subjective complaints were inconsistent with his level of care,
      which remained essentially unchanged and was "primarily conservative pain management
25    treatment." (AR 48-49.) Plaintiff argues that the ALJ mischaracterized his treatment. (ECF No. 23
      at 12-13.) The Commissioner argues that the ALJ properly relied upon the nature of Plaintiff's
26    treatment and points to evidence that more aggressive treatment – namely, surgery – was not
      indicated. (ECF No. 26 at 6-7.) The Court need not resolve this issue because any error in
27    characterizing Plaintiff's treatment was harmless in light of the other valid reasons for the decision
      to discount Plaintiff's allegations of disabling pain and symptoms.
28